UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-21408-CIV-WILLIAMS

CMG CONDO FUND LLC,

      Plaintiff,

v.

SHAUN DONOVAN, SECRETARY,
UNITED STATES DEPARTMENT OF
HOUSING AND URBAN DEVELOPMENT,
KENDALL LAKE TOWERS CONDOMINIUM
ASSOCIATION, INC., and UNIVERSAL
PROPERTY MANAGEMENT &
CONSULTANTS, INC.,

      Defendants.

_____/

## DEFENDANT SHAUN DONOVAN, SECRETARY OF HOUSING AND URBAN DEVELOPMENT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT

Defendant, Shaun Donovan, Secretary of the U.S. Department of Housing and Urban Development (the "Secretary"), by and through the undersigned Assistant United States Attorney and pursuant to Rule 12(b)(1), Fed. R. Civ. P., hereby moves to dismiss Count I of Plaintiff CMG Condo Fund LLC's Complaint as moot. Alternatively, the Secretary moves for summary judgment in his favor on Count I. As grounds for this Motion, the Secretary submits the following:

### INTRODUCTION

Plaintiff filed its original Complaint in Florida State Circuit Court on April 12, 2013. The Secretary removed the action to this Court on April 22, 2013. *See* D.E. 1. Plaintiff's original Complaint sought the Secretary's specific performance of a real estate Sales Contract. The contract relates to the Department of Housing and Urban Development's ("HUD") Property Disposition

Program. The property at issue is condominium unit 107 at 15231 SW 80th Street, Miami, Florida, 33193 (the "Property").

Plaintiff alleges that in April of 2012, HUD executed a contract for the sale of the Property, to an unspecified third party. Plaintiff further alleges that, in May of 2012, Defendant Kendall Lake Towers Condominium Association, Inc. (the "Condo Association"), exercised a right of first refusal to purchase the Property and simultaneously assigned that right to Plaintiff. Several months later, in January of 2013, Plaintiff alleges that it entered into a contract with HUD to purchase the Property on terms identical to that of HUD's original contract with the unidentified third party. Plaintiff alleges that the Condo Association then improperly exercised its right of first refusal on the subject unit a second time. Plaintiff contends that the Condo Association and the Management Company "falsely told HUD that [the Condo Association] had a right to re-exercise its right of first refusal on the Contract and that [the Condo Association] was appointing a different buyer for the subject property." Pl.'s Resp. to Condo. Assoc. and Mgmt. Co.'s Mot. to Dismiss (DE 13), p. 2 (citing Compl., ¶14). The Condo Association's exercise of its purported right of first refusal caused HUD to cancel the sales contract with Plaintiff. *See* Compl., ¶ 15.

On June 20, 2013, the Secretary moved to dismiss the Complaint on grounds of mootness, as HUD no longer owns the subject Property and could, therefore, not specifically perform the contract sued upon by the Plaintiff. The Secretary's Motion to Dismiss informed the Court and Plaintiff that the Property had been transferred to its prior owner / mortgagee, Bank of America, in the course of HUD's administration of the Federal Housing Administration's mortgage insurance program.

Plaintiff responded to the Secretary's Motion to Dismiss on December 11, 2013. Plaintiff argued that its claim for specific performance was not moot and that it was "entitled to obtain a

judgment against HUD to be able to later enforce its Lis Pendens against Bank of America." But as indicated in the Secretary's December 30, 2013 Reply to Plaintiff's Response to the Motion to Dismiss, Plaintiff's original complaint against the Secretary sought only specific performance of the subject contract and that claim was clearly moot.

Perhaps acknowledging the futility of its claim seeking to force the Secretary to sell property HUD no longer owns, Plaintiff now seeks leave to file an Amended Complaint against HUD. Though it was aware of HUD's transfer of the Property to Bank of America in June of 2013, when the Secretary moved to dismiss the original Complaint as moot, Plaintiff has waited close to eight months to name Bank of America as a defendant to its lawsuit. During that time, on August 26, 2013, Bank of America sold the Property to a fourth party purchaser, Oslaine Cano Munoz. Plaintiff's Amended Complaint also adds Mr. Munoz as a Defendant.

As it pertains to HUD, the Amended Complaint once again seeks specific performance, i.e., an order compelling HUD to sell it a piece of Property HUD does not own (Count I). The Amended Complaint also alleges that HUD, Bank of America and the fourth party purchaser (Mr. Munoz) engaged in "fraudulent transfer[s]" of the Property in order to frustrate Plaintiff's acquisition of the same (Count III). The Amended Complaint additionally seeks a declaratory judgment that Plaintiff "was entitled to close on the Contract and HUD was under a contractual obligation to close" in January of 2013.

As demonstrated below, Plaintiff's attempt to amend its original complaint is futile as against HUD. Like Plaintiff's original claim for specific performance, Plaintiff's new claim for declaratory relief is moot. As for Plaintiff's proposed claim for "Fraudulent Transfer," the Secretary enjoys sovereign immunity to such claims. Even if immunity did not apply, Plaintiff's proposed amendment fails to state a claim for fraudulent transfer. The Secretary, therefore,

respectfully requests that the Court deny Plaintiff's Motion to Amend and, instead, rule upon the Secretary's pending and fully briefed Motion to Dismiss (DE 18-1).

### I. HUD's Performance of the Contract at Issue is Impossible and Count I of the Proposed Amended Complaint is Moot.

As argued in the Secretary's Motion to Dismiss Plaintiff's original Complaint, HUD's performance of the Contract at issue is impossible. Like its corresponding claim in the original Complaint, Count I of the proposed Amended Complaint is, therefore, moot.

Before it was owned by HUD, the Property at issue was owned by Bank of America, N.A. *See* Declaration of Ralph Jackson, attached hereto as Exhibit "A." Before it was owned by Bank of America, the Property was owned by a married couple, subject to a mortgage held by Bank of America. *See id.* That mortgage was insured by the Federal Housing Administration ("FHA"). FHA insures eligible mortgagees against losses on home mortgage loans. *See* 12 U.S.C. § 1709(a). The "mortgagee" is the original lender under a mortgage, as well as the mortgagee's successors and assigns. 12 U.S.C. § 1707(b)(1); 24 C.F.R. § 203.251(f). When an eligible mortgagee applies for FHA insurance and is approved, the Secretary will issue a Mortgage Insurance Certificate, which contractually binds the FHA Commissioner and the mortgagee. The Mortgage Insurance Certificate evidences that the FHA and the mortgagee have entered a "Contract of Insurance" incorporating by reference 24 C.F.R. part 203, subpart B, and the applicable provisions of the National Housing Act, 12 U.S.C. § 1701, *et seq*.

When a mortgagor defaults on an FHA insured loan, the mortgagee must commence one of several specified actions, including, *inter alia,* obtaining a deed in lieu of foreclosure or commencing foreclosure. *See* 24 C.F.R. § 203.355(a). After the mortgagee forecloses or otherwise

4

takes title to the collateral, a mortgagee seeking insurance benefits must promptly convey to HUD "title to the property which meets the standards of the Secretary in force at the time the mortgage was insured and which is evidenced in the manner provided by such standards." *See* 12 U.S.C. § 1710(a)(1)(B). In this case, after its borrowers defaulted on their FHA insured mortgage, Bank of America acquired title to the Property through a deed in lieu of foreclosure. *See* Jackson Declaration. To receive insurance benefits, Bank of America conveyed the property to HUD on August 19, 2011, pursuant to 12 U.S.C. § 1710(a)(1)(B). A copy of the Special Warranty Deed conveying title to the Property from Bank of America, N.A. to the Secretary is attached to the Jackson Declaration (exhibit "A" hereto).

If, after the mortgagee conveys the collateral to HUD, the Secretary determines that the mortgagee has failed to comply with the standards set forth in 24 C.F.R. part 203, subpart B, the Secretary may reconvey the property to the mortgagee and cancel the insurance benefit claim application. *See* 24 C.F.R. § 203.363. Under 24 C.F.R. §203.41(b), a mortgage is not eligible for insurance if the mortgaged property is subject to legal restrictions on conveyance. A right of first refusal is such a "legal restriction on conveyance." 24 C.F.R. §203.41(a)(3)(ii). After HUD's attempts to sell the subject Property were prevented by the Condo Association's exercise of the right of first refusal provided in the Declaration of Condominium, HUD determined that the subject mortgage did not comply with the requirements of standards set forth in 24 C.F.R. part 203, subpart B. *See* Jackson Declaration. HUD, therefore, exercised its right to reconvey the Property to Bank of America on April 29, 2013, and cancelled Bank of America's insurance claim application. *See id.* A copy of the Quit Claim Deed conveying title to the Property from the Secretary to Bank of America, N.A. is attached to the Jackson Declaration.

Under Florida law, the sale of real property to a third party precludes the remedy of specific

performance for a buyer claiming breach of a real estate sales contract. *See, e.g., Schacter v. Krzynowek*, 958 So.2d. 1061, 1064 (4 th DCA 2007); *Seaside Cmty. Dev. Corp. v. Edwards*, 573 So.2d 142, 147 (Fla. 1st DCA 1991); *Krantz v. Donner*, 285 So.2d 699, 700 (Fla. 4th DCA 1973). Indeed, courts in Florida will not order "specific performance of a contract for the sale of realty . . . against [a] vendor who is unable to comply with the terms of his agreement." *Con-Dev of Vero Beach, Inc. v. Casano*, 227 So.2d 203, 206 (Fla. 4 th DCA 1973)(citing *Richards v. Mindlin*, 1927, 94 Fla. 699, 114 So. 508 (Fla. 1927)). As a result of its reconveyance of the subject Property to Bank of America, HUD is unable to comply with the terms of the Contract underlying this lawsuit and the remedy of specific performance is, therefore, unavailable.

Although under these circumstances a seller is generally held to be a trustee for the prior buyer and accountable to such buyer for any profit realized in the subsequent sale (*see Coppola Enters., Inc. v. Alfone*, 531 So.2d 334, 335 (Fla.1988)), HUD's reconveyance of the subject Property to Bank of America following its failed attempt to sell the property to Plaintiff yielded no profit for HUD. The agency merely returned title to the property to the insured lender after it determined that the lender had not complied with the requirements of the FHA program, as set forth in 24 C.F.R. part 203, subpart B. Having received no payment from Bank of America for the reconveyance, the transaction was neutral in terms of profit or loss to HUD.

Given that the remedy of specific performance is not available and that HUD did not profit from its reconveyance of the Property to Bank of America, such that it could be held liable as a trustee for the Plaintiff, there is no relief available to Plaintiff on Count I of its proposed Amended Complaint. Plaintiff's claim for specific performance of the Sales Contract is, therefore, moot. See *Powell v. McCormack*, 395 U.S. 486, 496 (1969) (a claim is moot "when the issues are no longer 'live' or the parties lack a legally cognizable interest in the outcome")*; Friends of*

*Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1216 (11th Cir.2009) ("An issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief");  see also *Toxco, Inc. v. Chu*, 801 F.Supp.2d 1, 6 (D.C. Dist. 2011 (plaintiff's claim for specific performance of a subcontract withdrawn from it by the Dep't of Energy was rendered moot by another company's completion of the subcontract work); *Fauconniere Mfg. Corp. v. Sec'y of Def.*, 794 F.2d 350, 351–52 (8th Cir.1986) (holding that a plaintiff's challenge to the Secretary of Defense's award of contracts was mooted by completion of the contract, noting that "[t]here is therefore nothing left to enjoin"); *James Luterbach Constr. Co. v. Adamkus*, 781 F.2d 599, 602 (7th Cir.1986) (holding that a plaintiff's action was mooted because the contract had been 98 percent completed); *Allis–Chalmers Corp. v. Arnold*, 619 F.2d 44 (9th Cir.1980) (determining that the plaintiff's action was moot because the contract at issue had been substantially completed); *Columbian Rope Co. v. West*, 142 F.3d 1313, 1316-17 (D.C.Cir.1998). 1316–17 (stating that "[n]either injunctive relief nor declaratory relief on the legality of the contract would affect the parties in any meaningful way because the contract has been fully performed").

The Supreme Court has explained that "a federal court has no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, 113 S.Ct. 447, 449, 121 L.Ed.2d 313 (1992) (quotations omitted).

## II. Plaintiff's Claim for Declaratory Judgment in Count IV of Its Proposed Amended Complaint is Also Moot against HUD

Perhaps recognizing that its claim for specific performance is moot, Plaintiff seeks to amend its Complaint with a claim for declaratory judgment against HUD (Count IV of the

7

proposed Amended Complaint). While it is true that the mootness of a plaintiff's claim for injunctive relief, including specific performance, is not necessarily dispositive regarding the mootness of his claim for a declaratory judgment, a declaratory judgment action is only a proper where the judgment would affect the behavior of "*the defendant toward the plaintiff.*" *See Rhodes v. Stewart*, 488 U.S. 1, 4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (*per curiam*) ("A declaratory judgment ... is no different from any other judgment. It will constitute relief ... if, and only if, it affects the behavior of the defendant toward the plaintiff." (emphasis added)); *Hewitt v. Helms*, 482 U.S. 755, 761, 107 S.Ct. 2672, 96 L.Ed.2d 654 (1987) (same); *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975) ("[A] federal court has neither the power to render advisory opinions nor 'to decide questions that cannot affect the rights of litigants in the case before them.' " (quoting *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) (per curiam))); *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ("[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."); *see also Rice*, 404 U.S. at 246, 92 S.Ct. 402 ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." (emphasis added)).

That a declaration might affect the interests of third parties *vis a vis* the plaintiff is insufficient. Under the federal Declaratory Judgment Act, Congress has authorized declaratory judgments only in cases of actual controversy. *See Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 17 (2d Cir.1993) (quoting 28 U.S.C. § 2201). Thus, the controversy must be real and substantial, admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a future, hypothetical, or no longer existing

8

set of facts. *See id*.   (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937)).

Consequently, a plaintiff seeking declaratory relief must name as defendant to his claim for declaratory relief the individuals or entities that are actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights. *See id.* Where a plaintiff has not named such individuals or entities,  plaintiff cannot be accorded effective declaratory relief and the action is moot. *Jordan v. Sosa*, 654 F.3d 1012, 1026 (10th Cir. 2011) (citing Note, Cases Moot on Appeal: A Limit on the Judicial Power, 103 U. Pa. L.Rev. 772, 775 (1955) ("For obvious reasons, courts prefer not to enter decrees which will have no effect on the present status of the parties, and will dismiss such cases in order to devote their time to the decision of live controversies, which do give relief to those whose rights have been violated.").

Applying the foregoing principles to Plaintiff's claim for specific performance against HUD (Count IV of the proposed Amended Complaint), it is clear that Plaintiff's claim is moot. The declaration sought – that in January, 2013, Plaintiff was entitled to close on the subject real estate contract with HUD -- would have absolutely no effect whatsoever on HUD.   HUD does not own the property.  A declaration that it should have proceeded to close on the January 2013 purchase and sale contract with Plaintiff would have no effect whatsoever on the agency's rights, responsibilities, or conduct whatsoever regarding either Plaintiff or the Property.  Such a declaration would, thus, constitute an inappropriate advisory opinion.

### III.     **HUD is Immune to a Claim of Fraudulent Conveyance.**

Plaintiff's proposed Amended Complaint also presents a claim for "Fraudulent Transfer" against HUD.  The United States and its agencies, however, are immune from such claims. Federal courts have jurisdiction over suits against the United States and its agencies only to the

extent that sovereign immunity has been waived. *See United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *see also FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."). Congress has not authorized a suit against the United States or its agencies for claims of "fraudulent transfer."

Plaintiff will doubtless argue that its claim for fraudulent transfer is authorized by 12 U.S.C. § 1702, which authorizes the Secretary of HUD, in carrying out the provisions of subchapters I, II, III, V, VI, VII, VIII, IX-B and X of the National Housing Act, to "sue and be sued" in his official capacity in any court of competent jurisdiction.  But section 1702 is not a general waiver of sovereign immunity and does not waive HUD's immunity to the kind of claim Plaintiff is attempting to make here. "Congress inserted the 'sue and be sued' clause because of HUD's role as an insurer of mortgages."  *El Dorado Springs v. U.S.*, 28 Fed. Cl. 132, 136 (Fed. Cl. 1993). "The section's original purpose was to permit holders of defaulted loans that were insured by HUD to sue HUD without encountering a defense of sovereign immunity." *Id*. (citing *James River Apartments, Inc. v. Federal Hous. Admin.*, 136 F.Supp. 24, 28 (D.Md.1955)).   Plaintiff here is not an insured mortgagee holding a defaulted loan, but instead a private party that wanted to purchase property from HUD. Accordingly, Plaintiff's proposed amendment of its Complaint to include a claim for fraudulent transfer against HUD would be futile.

Even if HUD were not immune to a claim of fraudulent transfer, Plaintiff's proposed Amended Complaint fails to state a claim for fraudulent transfer under Florida law.  Under Florida law, "[t]o constitute a fraudulent conveyance, there must be a creditor to be defrauded, a

debtor intending fraud, and a conveyance of property which is applicable by law to the payment of the debt due." *U.S. v. Fernon*, 640 F.2d 609 (5th Cir. 1981) (quoting *Bay View Estates Corp. v. Southerland*, 114 Fla. 635, 650, 154 So. 894, 900 (1934).  Despite Plaintiff's characterization of itself as such, Plaintiff is absolutely not HUD's "creditor."  Conversely, HUD was not Plaintiff's "debtor."  Plaintiff did not have, by virtue of its purported *lis pendens*, a lien on the Property at issue. Nor was HUD prohibited in any way from transferring title to the Property as it did. *See Haisfield v. ACP Florida Holdings, Inc.*, 629 So.2d 963, 965 (Fla. 4th DCA 1993) ("a *lis pendens* technically does not prevent the sale of the property, nor is it a lien on the property"). Accordingly, Plaintiff's proposed Amended Complaint fails to state a claim of fraudulent transfer against HUD and should be disallowed.

## CONCLUSION

For the foregoing reasons, Defendant Shaun Donovan, Secretary of Housing and Urban Development respectfully submits that Plaintiff's Motion to Amend its Complaint should be denied.

Dated:  February 20, 2014  
Miami, Florida

Respectfully submitted,

WIFREDO A. FERRER  
UNITED STATES ATTORNEY

By:  /s/ Carlos Raurell  
Carlos Raurell  
Assistant United States Attorney  
Florida Bar No. 529893  
Carlos.Raurell@usdoj.gov  
United States Attorney's Office  
99 NE 4th Avenue, Suite 300  
Miami, Florida 33132  
Telephone: (305) 961-9243  
Facsimile: (305) 530-7139

            Attorneys for the Secretary

## CERTIFICATE OF SERVICE

  I hereby certify that on February 20, 2014, I filed the foregoing document with the Clerk of the Court, using the CM/ECF system.


            /s/ Carlos Raurell
            CARLOS RAURELL
            Assistant United States Attorney